[No. A126393. First Dist., Div. Five. Apr. 9, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
CLENARD CEBRON WADE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I. and IV.

1144

**COUNSEL**

Walter K. Pyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMONS, J.**—Defendant Clenard Cebron Wade appeals following his conviction by a jury of grand theft, battery causing serious bodily injury, criminal threats, assault by force likely to produce great bodily injury, and false imprisonment. He contends the trial court erred in denying his pretrial motion to represent himself, his convictions for battery causing serious bodily injury and grand theft are unlawful, and the court improperly denied him presentence conduct credits. In the published portion of this opinion, we address two issues. First, we reject defendant's argument that Penal Code section 243, subdivision (f)(5)[1] helps define the phrase "serious bodily injury" in section 243, subdivision (d); that phrase is defined solely by section 243, subdivision (f)(4). Second, we agree with defendant's contention that a recent amendment to the definition of grand theft should be applied retroactively, reducing his conviction of that offense to petty theft. We remand for resentencing, including recalculation of defendant's presentence conduct credits.

## PROCEDURAL BACKGROUND

In March 2008, the Contra Costa County District Attorney filed an information charging defendant with robbery (§§ 211, 212.5, subd. (c); count 1); battery causing serious bodily injury (§§ 242, 243, subd. (d); count 2); inflicting corporal injury on a cohabitant (§ 273.5, subd. (a); counts 3 and 13); criminal threats (§ 422; counts 4, 8, 12, and 21–23); assault with a firearm (§ 245, subd. (a)(2); counts 5 and 14); false imprisonment by violence (§§ 236, 237, subd. (a); counts 6 and 15); being a felon in possession of a firearm (former § 12021, subd. (a)(1); count 7); residential burglary (§§ 459, 460, subd. (a); count 9); assault by force likely to cause great bodily injury (§ 245, subd. (a)(1); count 10); forcible sexual penetration (§ 289, subd. (a)(1); count 11); forcible oral copulation (§ 288a, subd. (c)(2); counts

---

[1] All undesignated section references are to the Penal Code.

16 and 18); and forcible rape (§ 261, subd. (a)(2); counts 17, 19, and 20). Jane Doe II was the alleged victim in counts 1, 2, and 8, and Jane Doe I was the alleged victim in the remaining counts, except the firearm possession charge. The information also alleged various enhancements, prior strike convictions, serious felony convictions, and prison terms.

The trial court granted defendant's motion to dismiss counts 21 through 23. After trial, a jury found defendant guilty of the lesser included offense of grand theft (§ 487) from Jane Doe II on count 1, battery causing serious bodily injury to Jane Doe II on count 2, criminal threats against Jane Doe II on count 8, assault by force likely to produce great bodily injury to Jane Doe I on count 10, and false imprisonment by violence of Jane Doe I on count 15. The jury found defendant not guilty on the remaining counts.

The trial court found true the allegations regarding defendant's prior strike convictions, serious felony convictions, and prison terms. The court imposed a term of 25 years to life on count 15, concurrent terms of 25 years to life on counts 2 and 8, a concurrent term of three years on count 10, and a consecutive term of eight months on count 1. The court also imposed a total of eight additional years on four enhancements. The total prison sentence was 33 years eight months to life. This appeal followed.

## FACTUAL BACKGROUND

Because the facts underlying the counts involving Jane Doe I are not relevant to the issues on appeal, we need not summarize them, other than to point out that they involve several alleged episodes of threats and physical and sexual violence against Jane Doe I, a woman with whom defendant had resided in a romantic relationship. Because the facts underlying the counts involving Jane Doe II *are* relevant to the issues on appeal, we do summarize them.

Jane Doe II testified she had a brief relationship with defendant in August 2006. He arrived at her house in the early morning hours of August 26th. He was slurring his words and being very loud, and she told him to leave. He got on top of her on her bed and refused to leave. They argued and he began to choke her with his arm. She managed to get his arm off her neck and they struggled. Defendant threatened to kill her and began to choke her again, this time with his two hands. Defendant put so much pressure on her throat that she could not breathe, and she blacked out. She did not know for how long she was unconscious.

Jane Doe II's daughter came to Jane Doe II's room and they yelled at defendant until he exited through the front door. Jane Doe II saw that

defendant was holding her purse. Jane Doe II's daughter tried to retrieve the purse, but defendant hit her with the purse and pushed her. The purse fell on the ground during the struggle; Jane Doe II tried to pick it up, but defendant managed to get it.[2] Defendant left with the purse, which contained about $700.

Jane Doe II testified she had bruises on her neck from the choking; the bruises remained for about a week. The mobility of her neck was not impaired by the choking. She did not seek medical treatment.

About two weeks after the incident, defendant left Jane Doe II a voice mail message stating, "I see you are not home and this is O'fear. I wouldn't come home tonight because you are gonna die."

## DISCUSSION

I.   *The Trial Court Did Not Err in Denying Defendant's* Faretta *Motion*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.   *The Trial Court's Instruction on Battery with Serious Bodily Injury Was Proper*

Defendant contends the evidence does not support the finding that the battery committed against Jane Doe II resulted in serious bodily injury, because there was no evidence that the injury required medical treatment. Although defendant presents his claim as a challenge to the sufficiency of the evidence, we construe it as one of instructional error, and conclude the trial court's instruction on serious bodily injury was proper. (See *People v. Gaio* (2000) 81 Cal.App.4th 919, 922 [97 Cal.Rptr.2d 392] [rejecting claims of instructional error and insufficiency of the evidence based on same misinterpretation of statutory requirements].)

██  A battery is "any willful and unlawful use of force or violence upon the person of another." (§ 242.) "If, however, the batterer not only uses unlawful force upon the victim but causes injury of sufficient seriousness, then a *felony* battery is committed. For this second category of battery, 'serious bodily injury' is required. (§ 243, subd. (d).)" (*People v. Longoria* (1995) 34 Cal.App.4th 12, 16 [40 Cal.Rptr.2d 213] (*Longoria*).) The statute provides that " 'Serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of

---

[2] More details about the struggle over the purse appear below in part III.

[*]See footnote, *ante*, page 1142.

any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (§ 243, subd. (f)(4).) Section 243 also prescribes enhanced punishment for batteries against peace officers and other specified persons. "If what would otherwise be a *simple* battery (any unlawful touching, even without causing pain or injury) is committed against, e.g., a peace officer engaged in the performance of his/her duties, then the offense is punishable by *one year* in county jail and a $2,000 fine." (*Longoria*, at p. 16; see § 243, subd. (b).) "Similarly, a distinction is made when it is a peace officer . . ." or another specified person "who is *injured* by a batterer. Unlike the ordinary victim, for enhanced punishment to be imposed 'serious bodily injury' is *not* required. Section 243, subdivision (c) provides that a battery against a peace officer engaged in the performance of his/her duties is punishable by a $2,000 fine and three years in state prison when 'an injury is inflicted on that victim.' " (*Longoria*, at pp. 16–17, first italics added; see *People v. Wilkinson* (2004) 33 Cal.4th 821, 831 [16 Cal.Rptr.3d 420, 94 P.3d 551].) The statute provides that " 'Injury' means any physical injury which requires professional medical treatment." (§ 243, subd. (f)(5).)

■  In the present case, defendant argues that both the section 243, subdivision (f)(4) *and* (5) definitions must be satisfied in order to show the "serious bodily injury" required to sustain a conviction for felony battery under section 243, subdivision (d). That is, he argues that, because the word "injury" is part of the phrase "serious bodily injury," the injury suffered by the victim must both require medical treatment (§ 243, subd. (f)(5)) and also constitute serious impairment of physical condition (§ 243, subd. (f)(4)). The instruction given by the trial court, CALCRIM No. 925, did *not* require a finding of necessity of medical treatment: "Whether a particular injury qualifies as a 'serious bodily injury' is a matter for the jury to determine. You must evaluate the nature, extent, and seriousness of any injury when considering this question. To find an injury to be a 'serious bodily injury,' you must find that the injury caused a serious impairment of physical condition. Such an injury may include, but is not limited to, loss of consciousness. While a loss of consciousness may qualify as serious bodily injury, whether it so qualifies in this case is a matter for the jury to determine." If defendant's interpretation of the statute is correct, the trial court's instruction was erroneous, because "The trial court must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all of the elements of a charged offense. [Citation.]" (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d 796, 850 P.2d 1].) Under defendant's interpretation of the statute, an injury requiring medical treatment is an element of the offense of battery with serious bodily injury.

■  To resolve whether defendant's interpretation of section 243 is correct, we are guided by familiar canons of statutory construction. " '[I]n

construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

■    We conclude that the plain language of section 243, subdivision (f)(4) controls. That is, a loss of consciousness that constitutes a "serious impairment of physical condition" is a "serious bodily injury" without any showing that the injury required medical treatment. If the Legislature had intended that "serious bodily injury" means a "serious impairment of physical condition" that *also* required medical treatment, it could have so provided. The separate definition of "injury" in section 243, subdivision (f)(5) does not render ambiguous the clear language of subdivision (f)(4), because subdivision (f)(5) clearly applies to section 243, subdivision (c), for batteries against peace officers or other specified persons causing "injury." Accordingly, applying the plain language of subdivision (f)(4) does not, contrary to defendant's assertion, make the definition of "injury" in subdivision (f)(5) surplusage. (See *In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155] ["Whenever possible, we must give effect to every word in a statute and avoid a construction making a statutory term surplusage or meaningless. [Citations.]"].)[3]

■    Moreover, "serious bodily injury," as used in section 243, is " 'essentially equivalent' " to " 'great bodily injury,' " as used, for example, in the section 12022.7 enhancement for the infliction of such injury on a person during the commission of a felony. (*People v. Burroughs* (1984) 35 Cal.3d 824, 831 [201 Cal.Rptr. 319, 678 P.2d 894], overruled on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 89 [96 Cal.Rptr.2d 451, 999 P.2d 675]; accord, *People v. Moore* (1992) 10 Cal.App.4th 1868, 1871 [13

---

[3] We have reviewed the legislative history of Senate Bill No. 1447 (1979–1980 Reg. Sess.) (Stats. 1980, ch. 1340, § 2.2, p. 4718, eff. Sept. 30, 1980), which enacted the definition of "injury" presently located in section 243, subdivision (f)(5); it provides no guidance on the issue before this court.

Cal.Rptr.2d 713]; *People v. Villarreal* (1985) 173 Cal.App.3d 1136, 1141 [219 Cal.Rptr. 371]; see also *People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375 [19 Cal.Rptr.2d 434] ["substantially the same meaning"]; but see *People v. Taylor* (2004) 118 Cal.App.4th 11, 26 [12 Cal.Rptr.3d 693] [although the "usual assumption" is that the phrases have the "same meaning," the statutory definitions differ].) " '[G]reat bodily injury' means a significant or substantial physical injury." (§ 12022.7, subd. (f).) Although any medical treatment obtained by the victim is relevant to determining the existence of "great bodily injury" (*People v. Cross* (2008) 45 Cal.4th 58, 66 [82 Cal.Rptr.3d 373, 190 P.3d 706]), the statutory definition and relevant CALCRIM instruction (No. 3160) do not *require* a showing of necessity of medical treatment. Nor are we aware of any case authority imposing such a requirement. Accordingly, our construction of "serious bodily injury" is consistent with the definition of "great bodily injury." .

■  Because the prosecution was not required to show that Jane Doe II's injury required medical treatment in order to prove defendant committed a battery causing serious bodily injury, the trial court's instruction properly omitted that element. We will affirm the conviction for felony battery against Jane Doe II.[4]

### III.  *The Conviction for Grand Theft Must Be Reduced to Petty Theft*

■  The jury found defendant guilty of grand theft (§ 487), a lesser included offense of robbery, which was alleged in count 1 of the information. The jury was instructed that defendant committed grand theft "if he stole property worth more than $400" or if he stole property from the victim's person. The instruction explained that "Theft is from the person if the property taken was in the clothing of, on the body of, or in a container held or carried by, that person." Jane Doe II testified that defendant took her purse, which contained $700 in cash. After defendant filed his notice of appeal, the Legislature amended section 487, subdivision (a) to define grand theft as the taking of property worth more than $950. (Stats. 2010, ch. 693, § 1.) Because defendant's conviction for grand theft is not yet final, he contends he is entitled to the benefit of the amendment and his conviction should be reduced to petty theft.

■  In *People v. Vinson* (2011) 193 Cal.App.4th 1190 [123 Cal.Rptr.3d 625], the court considered the issue of retroactivity in the context of a

---

[4] Defendant does not contend that the evidence of Jane Doe II's loss of consciousness was insufficient to show a "serious impairment of physical condition" within the meaning of section 243, subdivision (f)(4). (See *People v. Taylor, supra,* 118 Cal.App.4th at p. 25.) Any such contention has been forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].)

legislative amendment that, like the amendment in the present case, redefined the elements of a criminal offense. In *Vinson*, prior to finality of the defendant's conviction for petty theft with a prior (§ 666), the Legislature amended the statute to require proof of at least three prior convictions, not just one, for individuals like the defendant. (*Vinson*, at p. 1194.) In the absence of any express directive from the Legislature (*id.* at p. 1196), the court concluded that the statute was retroactive (*id.* at p. 1199). The court followed *In re Estrada* (1965) 63 Cal.2d 740, 748 [48 Cal.Rptr. 172, 408 P.2d 948], which held, "where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." The *Vinson* court reasoned that the amendment to section 666 "had the effect of mitigating punishment by raising the level of recidivism required before a defendant can be sentenced to state prison." (*Vinson*, at p. 1199.) Applying the amendment retroactively also was consistent with the legislative intent "to save money and space in order to partially offset the higher costs and inmate population occasioned by increasing sentences for sexual predators." (*Ibid.*) The court explained: "In light of the concerns expressed in the legislative history about prison overcrowding and the costs associated with the act, and the fact the cost avoidance achieved by shifting some nonviolent, non-sex-offender recidivists to the county correctional level will not completely offset the new costs [citation], it would make no sense to conclude the section 666 amendment should apply only concurrently with the remaining provisions of the act, i.e., prospectively." (*Vinson*, at p. 1199.)

The same reasoning applies in the present case. An August 3, 2010, Senate Rules Committee analysis provided the following argument in support of the amendment to section 487: "According to the author's office . . . 'existing law sets the minimum threshold for grand theft at $400. This amount has not been indexed for inflation and has not been adjusted since 1982. Last year, we adjusted the threshold for 39 property crimes but did not adjust grand theft. . . . [¶] . . . AB 2372 adjusts the threshold amount for the first time in a generation, taking into consideration these inflationary factors, and sets the amount at $950. . . . In 2009, the Department of Corrections estimated savings of $68.4 million dollars for the 2010/11 Budget if all property crimes were adjusted for inflation. Leaving the grand theft threshold unchanged undermines these savings. The Department estimates there will be 2,152 fewer defendants sent to state prison for these property crimes by December 2011 if AB [2372] is enacted into law.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2372 (2009–2010 Reg. Sess.) as amended Mar. 11, 2010, pp. 2–3.) Similar to the circumstances in *Vinson*, the 2010 amendment to section 487 mitigated punishment by raising the value of the stolen property required to establish the crime of grand theft, and the Legislature was motivated by a desire to save money by

avoiding sentencing certain defendants to prison. In the absence of an express statement to the contrary, we conclude the Legislature intended that the amendment to section 487 be applied retroactively.

In their brief on appeal, the People do not address the merits of defendant's argument that the amendment to section 487 applies retroactively. Instead, the People argue that, even if the theft of $700 is no longer a legal basis for the conviction for grand theft, the conviction need not be reversed because the evidence showed that defendant took the purse from Jane Doe II's person, which is an alternate basis to sustain the grand theft conviction. However, the evidence on that issue was equivocal. After some difficulty remembering and after reviewing the police report, Jane Doe II testified on direct examination that she grabbed the purse while it was on the ground and defendant pulled it away from her. On cross-examination, she testified that she "had it," but she admitted she did not remember how she got it.

■ The circumstances in the present case are analogous to those in *People v. Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468], where the court stated, "when the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand." (*Id.* at p. 69, overruled on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 239 [83 Cal.Rptr.2d 533, 973 P.2d 512] and *People v. Hall* (1986) 41 Cal.3d 826, 834 & fn. 3 [226 Cal.Rptr. 112, 718 P.2d 99]; accord, *People v. Guiton* (1993) 4 Cal.4th 1116, 1122 [17 Cal.Rptr.2d 365, 847 P.2d 45] (*Guiton*); *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 523 [94 Cal.Rptr.3d 228].) In *People v. Chun* (2009) 45 Cal.4th 1172, 1203 [91 Cal.Rptr.3d 106, 203 P.3d 425], the court clarified that, to affirm a conviction where a jury has been presented both valid and invalid theories, "a reviewing court must conclude, beyond a reasonable doubt, that the jury based its verdict on a legally valid theory . . . ." (See also *Guiton*, at p. 1129 [where the jury has been presented with a legally incorrect theory, reversal is required "absent a basis in the record to find that the verdict was actually based on a valid ground"].) Here, the jury was presented with two theories of grand theft—the taking of property worth over $400 and the taking of property from the person of the victim. The conviction can be sustained on appeal only if the verdict rested on the theory that the purse was taken from the person of Jane Doe II. Because we cannot conclude beyond a reasonable doubt that the jury relied on that valid theory in finding defendant guilty, the conviction for grand theft must be reversed. We will modify the judgment to reflect a conviction of the lesser included offense of petty theft (§§ 484, 488)

and remand to the trial court for resentencing.[5] (See §§ 1181, subd. 6, 1260; *People v. Navarro* (2007) 40 Cal.4th 668, 675–678 [54 Cal.Rptr.3d 766, 151 P.3d 1177].)

IV.  *Remand Is Appropriate on the Issue of Presentence Conduct Credits*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment on count 1 is reversed with directions as follows: If the People do not bring the defendant to trial within 60 days after the filing of the remittitur in the trial court pursuant to section 1382, the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect a conviction of petty theft (§§ 484, 488) and shall resentence the defendant accordingly, including the determination of presentence conduct credits. (See *People v. Edwards, supra,* 39 Cal.3d at p. 118.) Following resentencing, the trial court is directed to send an amended abstract of judgment to the California Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

Jones, P. J., and Needham, J., concurred.

A petition for a rehearing was denied May 8, 2012, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 15, 2012, S203421.

---

[5] Because there was sufficient evidence at trial to support the grand theft conviction on the valid theory, the People are entitled to retry defendant on the charge, should they so choose. (See *People v. Edwards* (1985) 39 Cal.3d 107, 118 [216 Cal.Rptr. 397, 702 P.2d 555]; see also *People v. Brooks* (1986) 185 Cal.App.3d 687, 697 [230 Cal.Rptr. 86].) Our disposition will preserve that option.

[*]See footnote, *ante,* page 1142.