Filed 12/29/14  P. v. Mejia CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE RICARDO MEJIA,<br><br>    Defendant and Appellant. | G049392<br><br>(Super. Ct. No. 10CF3415)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Orange County, Francisco P. Briseno, Judge.  Affirmed.

        Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

Jose Ricardo Mejia appeals from a judgment after a jury convicted him of multiple sex offenses and found true numerous "One Strike" allegations (Pen. Code, § 667.61; all further statutory references are to the Penal Code). Mejia argues insufficient evidence supports the "One Strike" allegations as to two of the counts. We disagree and affirm the judgment.

FACTS

*Sarina D.*

One evening in August 2009, Mejia picked up Sarina D., who was working as a prostitute. After Sarina got into his backseat, Mejia repeatedly hit her face with a crowbar while he pulled off her underpants. Sarina tried to escape, but Mejia hit her on the head with the crowbar and dragged her back into the car's backseat. Mejia told her, "You're going to die tonight, bitch." Blood rolled down Sarina's face as Mejia forced her to orally copulate him. When Mejia saw a truck's headlights, he ran away. Sarina waited for police to arrive, and paramedics took her to the hospital where a detective obtained her DNA. A detective obtained Mejia's DNA the following day, but he was not arrested. Forensic testing revealed Mejia attacked Sarina. Sarina identified Mejia as her attacker from a photographic lineup.

*Amber M.*

In February 2010, Mejia picked up Amber M., who was working as a prostitute. After Amber got into his car, she told him where to drive, but he ignored her and drove to another location and parked. Amber got into the backseat, and Mejia got out of the car and got into the backseat. Mejia pulled out his penis, put on a condom, and told Amber to "suck it." Amber said he needed to pay her $100 first. Mejia punched her in the face, which caused her head to slam into the car window. Amber blacked out, heard ringing, was out of balance, and was shaking. Mejia continued to hit her. Mejia grabbed her hair, forced her head down, and said, "Suck my dick, bitch." After he took the condom off, he forced her head up and down on his penis. About one minute later,

Mejia grabbed her by the hair, threw her over the middle console, lifted up her skirt from behind, and raped her. Mejia pulled her down on top of him and moved her up and down on his penis. Mejia said, "Fuck you, I'm sick of your pussy," and threw her on the seat. Mejia asked her, "Why are you shaking?" and she said, "I don't know, I'm scared." He stated, "Give me one reason why I shouldn't kill you right now." Amber pleaded with him not to kill her. After he said, "I should kill you right now," he reached down towards his pants. Amber cried and pleaded with him not to hurt her, and he said, "I'll give you three seconds to get out of this car before I shoot you." Amber grabbed what she could, ran, and called a friend who picked her up.

Amber's pimp would not let her call the police, assisted her in cleaning herself thoroughly, and made her return to work the following day. As a result of the damage to her jaw, Amber had difficulty talking, eating, and performing oral sex. She could only drink liquids for a week. One customer forced her to perform oral sex despite the injuries to her mouth. A couple days later, Amber was arrested for prostitution. It was then she reported the rape. Officers took photographs of her injuries, which showed redness on her jaw and bruising on her arm. She gave police her skirt, which she had not cleaned. Forensic testing of the skirt revealed her attacker was Mejia.

*Jennifer M.*

One evening in August 2010, Mejia picked up Jennifer M., who was working as a prostitute. After Jennifer got into Mejia's car, Mejia put a knife to her throat, told her that she deserved to die, and forced her to take off her clothes. After Mejia forced Jennifer to orally copulate him, he raped her. He told her to put her clothes on, that she deserved to die, that his family was dead, and that she was "a fucking slut." Mejia drove to the area where Jennifer left her car. When he stopped and they got out of his car, Jennifer ran away. Mejia tried to catch her, but she escaped. Forensic testing revealed Mejia attacked Jennifer. Jennifer identified Mejia as her attacker from a photographic lineup. Law enforcement officers arrested Mejia.

An information charged Mejia with the following offenses: Sarina—aggravated assault with a metal rod (§ 245, subd. (a)(1)) (count 1), and forcible oral copulation (§ 288a, subd. (c)(2)) (count 2); Amber—forcible oral copulation (§ 288a, subd. (c)(2)) (count 3), and forcible rape (§ 261, subd. (a)(2)) (count 4); and Jennifer—forcible oral copulation (§ 288a, subd. (c)(2)) (count 5), and forcible rape (§ 261, subd. (a)(2)) (count 6). With respect to count 2, the information alleged Mejia personally inflicted great bodily injury (§ 667.61, subds. (a), (e)), personally used a deadly weapon (§ 667.61, subds. (b), (e)(3)), and committed an offense against more than one victim (§ 667.61, subds. (b), (e)(4)). The information alleged he personally inflicted great bodily injury and committed an offense against more than one victim (§§ 667.61, subds. (a), (c) & (e), 12022.8), as to counts 3 and 4. As to counts 5 and 6, the information alleged Mejia personally used a deadly weapon and committed an offense against more than one victim (§ 667.61, subds. (a), (e)).

The jury convicted Mejia on all the counts and found true all the allegations. The trial court sentenced Mejia to three consecutive terms of 25 years to life on counts 2, 3, and 5 for a total prison term of 75 years. The court imposed concurrent terms on the remaining counts.

## DISCUSSION

Mejia argues insufficient evidence supports the jury's findings he inflicted great bodily injury on Amber as to counts 3 and 4. We disagree.

In reviewing a challenge to the sufficiency of the evidence, we examine the entire record in the light most favorable to the judgment to determine whether there is substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) We presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*Ibid*.) If the circumstances reasonably justify the jury's findings,

4

reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*Ibid.*)

Section 667.61 is known as the "One Strike" law and ensures sex offenders receive long prison sentences regardless of whether they have suffered prior convictions. (*People v. Wutzke* (2002) 28 Cal.4th 923, 926, 929.) Section 667.61 provides for prison sentences of 25 years to life (§ 667.61, subd. (a)), and 15 years to life (§ 667.61, subd. (b)), for enumerated offenses (§ 667.61, subd. (c)), committed under specified circumstances (§ 667.61, subds. (d), (e)). Count 3, forcible oral copulation (§ 288a, subd. (c)(2)), and count 4, forcible rape (§ 261, subd. (a)(2)), are both enumerated offenses (§ 667.61, subd. (c)(1), (7)), and as relevant here an offense against more than one victim and the infliction of great bodily injury are specified circumstances (§ 667.61, subds. (a), (e)(4), (7)).

Section 12022.7, subdivision (f), defines "'great bodily injury'" as "significant or substantial physical injury." We can look to section 243 to help define the types of injuries that qualify as significant or substantial. (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1149 (*Wade*) [section 12022.7 "'"essentially equivalent"' to" section 243].) Section 243, subdivision (f)(4), states: "'Serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." Whether there is great bodily injury is a factual issue to be decided by the jury. (*People v. Cross* (2008) 45 Cal.4th 58, 64-65.) The trial court instructed the jury here "'Great bodily injury,' . . . means a significant or substantial physical injury. Minor, trivial, or moderate injuries do not constitute great bodily injury." (CALJIC No. 17.20.)

Here, there was overwhelming evidence Mejia inflicted great bodily injury on Amber. At the outset of the encounter, Mejia hit Amber on the face with such force

5

her head slammed against the window. Amber testified she blacked out, heard ringing, and was dizzy. Evidence Amber lost consciousness qualifies as a significant or substantial injury pursuant to sections 12022.7 and 243. But there was more. Mejia's repeated punches to Amber's face caused swelling and bruising to her jaw. As a result, Amber could not eat for a week; she had to drink liquids. Evidence Amber had a prolonged impairment to a bodily function also qualifies as a significant or substantial injury. Finally, Amber testified Mejia repeatedly hit her on the face and arms, pulled her hair, and threw her around the back seat while engaging in various nonconsensual sexual encounters. This too was evidence of significant or substantial injuries. (*People v. Escobar* (1992) 3 Cal.4th 740, 750 (*Escobar*) [rape victim suffered injury to neck, bruises and abrasions to legs, knees, and elbows, and sore vaginal area].)

Mejia contends evidence Amber did not go to the hospital, did not call the police, and performed oral sex a couple days later establish her injuries were not significant or substantial. First, the fact Amber did not go to the hospital does not lessen the severity of her injuries. (*Wade, supra,* 204 Cal.App.4th at pp. 1149-1150 [evidence of medical treatment relevant but not required to whether there was great bodily injury].) Second, Amber testified her pimp would not let her call the police and forced her to return to work, where she was forced to perform oral copulation on a customer. We fail to see how Amber's subsequent and continued victimization somehow shows her prior injuries were minor, trivial, or moderate. What Mejia asks us to do is reweigh the evidence, which we cannot do, and in this case, would not do because the evidence of great bodily injury is overwhelming. (*Escobar, supra,* 3 Cal.4th at p. 750 [we are bound to accept jury's finding of great bodily injury when supported by substantial evidence even though circumstances might reasonably be reconciled with a contrary finding].)

Finally, Mejia's reliance on *People v. Martinez* (1985) 171 Cal.App.3d 727, is misplaced. In that case, the evidence was insufficient to support a great bodily injury

6

enhancement where the victim, who was slightly stabbed through two shirts and a "'very heavy coat,'" suffered a minor laceration that was "'almost like a pinprick.'" (*Id.* at pp. 735-736.) Here, Amber's injuries far exceeded a "pinprick." As we explain above, Mejia punched Amber so hard she lost consciousness, he raped her, he repeatedly hit her on the face impairing her ability to talk and eat for a week. Thus, based on the entire record, there was strong evidence Mejia inflicted great bodily injury on Amber.

DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


BEDSWORTH, J.