Filed 8/23/23  P. v. Webb CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097508 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE010895) |
| v. | |
| ISSAC DEMARIYAE WEBB, | |
| Defendant and Appellant. | |

After a heated exchange over a gas pump, defendant Issac Demariyae Webb knocked E.B. to the ground, rendering E.B. unconscious.  While E.B. was on the ground unconscious, defendant hit E.B. twice more.

A jury found defendant guilty of battery causing serious bodily injury and assault with force likely to produce great bodily injury.  It further found true the allegations that defendant personally inflicted serious bodily injury and great bodily injury on E.B.  The trial court sentenced defendant to the low term of two years in state prison, doubled due to a prior strike, plus three years for the great bodily injury enhancement.

1

On appeal, defendant challenges the jury's great bodily injury enhancement finding on a sufficiency of the evidence theory. He argues that the finding could have been based on the two blows rendered after E.B.'s fall, but there was no unanimity instruction as to the enhancement and no evidence showed that E.B. sustained any injury from the later blows. We will affirm.

BACKGROUND

E.B. purchased gas and a car wash at a gas station. After he finished pumping gas into his car, he waited at the gas pump for his receipt. While E.B. was waiting, defendant parked in front of E.B., rolled down his window, and started shouting profanities at E.B., demanding that he leave. E.B. shouted back and told defendant he had to wait. The exchange lasted a few minutes before defendant drove away.

Defendant, however, did not leave the gas station or use other available pumps. He drove around the gas station, returned, and parked next to E.B. Defendant got out of his car and approached E.B., again cursing and demanding E.B. leave. Worried that defendant might hurt him and his son, E.B. reached into his car to get an axe. E.B. held the axe down by his side so that defendant could see it, but did not raise the axe. Then, defendant's girlfriend exited the car holding their baby. When E.B. saw them, he put the axe back in the car. At this time, a different customer at the gas station approached E.B. and asked why he did not leave when defendant told him to. As E.B. was distracted and explaining to the customer that he was waiting for his receipt, defendant rushed over and hit E.B. hard enough to knock him unconscious. When E.B. regained consciousness, his son helped him up off the ground. E.B. was unable to get up by himself and he was confused. He had swelling on his face, a bump on his head, a cut in his mouth, and abrasions and bruises on his back and elbow.

2

The People charged defendant with battery causing serious bodily injury (Pen. Code, § 243, subd. (d)—count one)[1] and assault with force likely to produce great bodily injury. (§ 245, subd. (a)(4)—count two.) The People further alleged that, as to count one, defendant personally inflicted the great bodily injury (§ 1192.7, subd. (c)(8)); as to count two, defendant personally inflicted the great bodily injury (§ 12022.7, subd. (a)) and was released from custody on bail in a different case when he committed the current offense (§ 12022.1); defendant had a prior serious or violent felony conviction (§§ 667, subds. (b)-(i), 1170.12); and various aggravating factors. (Cal. Rules of Court, rule 4.421(a)(1), (b)(1)-(3).)

At trial, defendant testified that during their first exchange, E.B. wielded a weapon that looked like a machete (but turned out to be a hatchet) and mentioned that he had a gun in the car. During a second exchange, after E.B. put the axe back in the car, defendant got out of his car to talk to E.B. because he did not want to look afraid in front of his family. As he was approaching, E.B. said he would get the gun and opened his rear passenger door. Based on E.B.'s earlier display of the axe, defendant was worried that E.B. might be a violent person. Defendant hit E.B. because he feared that E.B. might injure him. After E.B. fell, defendant was uncertain whether E.B. was unconscious and hit E.B. again to "eliminate the threat."

The gas station's security camera footage showed that defendant got out of his car and approached E.B. Defendant stopped when E.B. opened the passenger side door and reached into his car. Defendant then approached E.B. again as E.B. stood next to his car, and he hit E.B. in the face, knocking him down to the ground. After E.B. fell, defendant hit E.B. twice more.

---

[1] Undesignated statutory references are to the Penal Code.

During closing argument, the prosecutor asserted that defendant did not act in self-defense when he struck E.B. The prosecutor pointed out that defendant returned to confront E.B. after he allegedly learned E.B. had a gun and chose to get out of his car to approach E.B. She told the jury that defendant provoked the fight and had no right to self-defense. The prosecutor further informed the jury that "[t]he right to use force in self-defense continues only as long as the danger exists or reasonably appears to exist." Thus, after E.B. was on the ground, "[t]here's no right to self-defense there at that point."

The jury was instructed that great bodily injury means "significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." The prosecutor also told the jury: "If all [E.B.] had were the scratches on his arm, then certainly that would be minor. If he had some bad bruising, that would be moderate. But being out cold to the point where people see his legs laying on the ground not moving at all, that is more than minor, more than moderate to any person. Any person would have serious concern, serious concern if they knew someone was unconscious."

The trial court gave a unanimity jury instruction as to the substantive crimes, requiring the jury to unanimously agree that defendant committed the same specific criminal acts.

Following the jury trial, defendant was found guilty of the battery with serious bodily injury and the assault charges. Specifically, the jury found that defendant personally inflicted serious bodily injury when he battered the victim. But it also found that the crime did not involve great violence, harm, or cruelty. (Cal. Rules of Court, rule 4.421(a)(1).) With respect to count two, the jury again found that defendant personally inflicted great bodily injury in conjunction with the assault, but not great violence, harm, or cruelty.

In a bifurcated proceeding, the trial court found that defendant sustained a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12) and had served a prior prison term. The trial court further found not true the allegation that defendant's prior convictions

4

were numerous or of increasing seriousness and struck defendant's prior serious felony conviction under section 1385.

The trial court sentenced defendant to an aggregate term of seven years in state prison, consisting of the low term of two years for count two, doubled due to the prior strike, plus three years for the great bodily injury enhancement. It further imposed and stayed the low term of two years for count one pursuant to section 654, as well as a one-year term for the on-bail enhancement pending resolution of the other case.

Defendant timely appealed.

DISCUSSION

Defendant contends that the evidence was insufficient to support a true finding on the great bodily injury enhancement as to count two. According to defendant, due to the lack of a unanimity instruction on the enhancement, some jurors could have found the enhancement true based on the two blows inflicted after E.B. was knocked down and fell unconscious, but he claims no evidence shows E.B. suffered any injury from these additional blows.

Section 12022.7, subdivision (f) defines " 'great bodily injury' " as "a significant or substantial physical injury." It is " ' "essentially equivalent" ' " to " 'serious bodily injury' " as used in section 243, which includes a loss of consciousness that does not require medical treatment. (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1149; see *In re Cabrera* (2023) 14 Cal.5th 476, 490 [recognizing that serious bodily injury and great bodily injury are essentially equivalent elements].) But they are not interchangeable, and a jury's finding of serious bodily injury does not necessarily establish great bodily injury. (*Cabrera, supra*, at p. 485; *People v. Taylor* (2004) 118 Cal.App.4th 11, 25.) Our Supreme Court has declined to decide which type of injury amounts to great bodily injury as a matter of law. (*Cabrera*, at p. 484.) Ultimately, whether an injury constitutes great bodily injury is for the jury to determine based on the facts of each case. (*Id*. at p. 487.)

" 'We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction.' [Citation.] 'We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.]' " (*People v. Rivera* (2019) 7 Cal.5th 306, 331.) " ' "If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' [Citations.]" (*People v. Escobar* (1992) 3 Cal.4th 740, 750, fn. omitted.)

Here, sufficient evidence supported the jury's great bodily injury enhancement finding. Defendant punched E.B. and knocked him to the ground, causing E.B. to lose consciousness. E.B.'s loss of consciousness was sufficient to support the jury's great bodily injury finding, and defendant does not challenge this point. (See *People v. Wade, supra*, 204 Cal.App.4th at p. 1149.)

Instead, defendant contends the jury *could have* found great bodily injury based on the subsequent punches alone. But the prosecutor explicitly told the jury that the bruises and abrasions on E.B.'s body would be "minor" or "moderate," and only the loss of consciousness could constitute great bodily injury. The jury also was instructed that great bodily injury means "an injury that is greater than minor or moderate harm." We presume the jury followed these instructions. (*People v. Lindberg* (2008) 45 Cal.4th 1, 26.) Thus, the jury must have found the loss of consciousness constituted great bodily injury. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1127 [we presume the jury has acted reasonably].) Because, as defendant points out, no evidence was introduced to suggest that the two blows inflicted after E.B. fell down caused E.B. to lose consciousness, the jury's great bodily injury finding could not have been based on the subsequent strikes. We therefore find sufficient evidence supports the true finding on the great bodily injury enhancement.

Defendant also argues reversal is required because the jury could have found that he had a right to self-defense when he first hit E.B., but still rejected his self-defense

6

claim because he had no right to self-defense when he struck E.B. after E.B. fell to the ground. But defendant does not dispute that the jury could properly find that he had no right to self-defense at any time. We decline to reverse because "when a prosecutor argues two theories to the jury, one of which is factually sufficient and one of which is not, the conviction need not be reversed, because the reviewing court must assume that the jury based its conviction on the theory supported by the evidence." (*People v. Seaton* (2001) 26 Cal.4th 598, 645.)

DISPOSITION

The judgment is affirmed.


_____KRAUSE_____, J.


We concur:


\_\_\_\_RENNER_____, Acting P. J.


\_\_\_\_BOULWARE EURIE\_\_\_, J.

7