Filed 8/27/13  P. v. Barker CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C069907 |
| v. | (Super. Ct. No. SF116142E) |
| JONATHAN WILLIAM BARKER, | |
| Defendant and Appellant. | |

A jury found defendant Jonathan William Barker guilty of two misdemeanors, acting without a real estate license (Bus. & Prof. Code, § 10130) and failure to provide borrowers a required loan modification notice (Civ. Code, § 2944.6, subd. (a)).  In addition, the jury found him guilty of a felony, grand theft of property in excess of $400 (Pen. Code, § 487, subd. (a)),[1] and not guilty of another felony, conspiracy (§ 182, subd. (a)(1)).  Defendant admitted allegations that he had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12) and committed a felony while released on bail or his own recognizance (§ 12022.1).

---

[1]     Undesignated statutory references are to the Penal Code.

1

Defendant was sentenced to prison for eight years. Concurrent jail terms were imposed for the misdemeanors. Defendant was awarded 187 days' custody credit and 37 days' conduct credit.

On appeal, defendant contends (1) his request to discharge his retained counsel was erroneously denied, (2) his felony grand theft conviction must be reduced to misdemeanor petty theft, and (3) principles of equal protection entitle him to additional conduct credit. Although defendant has forfeited any claim of error with respect to the trial court's ruling on reconsideration denying his request to discharge retained counsel, we conclude there was no error. The trial court acted within its discretion to deny defendant's untimely request. We agree with defendant that his felony grand theft conviction must be reduced to a misdemeanor petty theft because the threshold amount for grand theft had been increased to $950 and this increased amount applied to cases not yet final on appeal. As to defendant's conduct credits, we reject defendant's argument based on an opinion issued by the California Supreme Court. We also note the trial court made a mistake by applying the three strikes law's limitation on postcommitment credits to defendant's presentence conduct credits. As a result, we modify the judgment to reduce the felony grand theft conviction to a misdemeanor petty theft and dismiss the enhancement for committing a felony while released from custody. We remand the matter to the trial court to resentence defendant based on his conviction of three misdemeanors and recalculate his presentence conduct credits.

FACTS

The facts of defendant's offenses are not at issue in this appeal and may be briefly stated. Victim Keith Sellons owned a home in Long Beach; victims Daniel Forsythe and Linda Forsythe owned a home in Stockton; and victim Byron Hays owned a home in Spokane, Washington. All three victims had trouble making mortgage payments and sought modifications of their home loans. Defendant told each victim that his employer, Home Care Mortgage Solutions, could obtain the desired loan modification. Each victim

paid money to obtain the modification, but no modifications were obtained. As relevant to the felony grand theft conviction, the Forsythes paid $750 to obtain a loan modification that defendant never obtained.

## DISCUSSION

### I

### *Discharge of Retained Counsel*

Defendant contends the trial court violated his Sixth Amendment right to counsel of his choice when it denied his request to discharge his retained counsel. We are not persuaded.

### *Background*

On August 18, 2011, approximately a week prior to defendant's scheduled jury trial, defendant appeared before the trial court for a *Marsden* hearing.[2] Defendant informed the court he was dissatisfied with his attorney because they had not seen each other in approximately a month, she would not file the motions he requested, and she would not seek to continue the case. For example, defendant claimed his attorney would not file a suppression motion, a motion to dismiss, or a motion alleging vindictive prosecution. Defendant indicated he and his counsel disagreed about trial strategy, and he felt "rushed into this [proceeding]." He claimed she argued with him about his requests to file motions and wanted him to pay more money to represent him. Defendant reiterated he felt rushed to take a plea deal or proceed to trial. He added he did not know he would have a *Marsden* hearing because he "thought if you hired your own attorney you could fire your own attorney because she's a private attorney and she was paid. [He] didn't know you had to have a *Marsden* hearing."

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

The trial court replied that defendant could fire his own attorney if he had cause. The court noted the docket entry from July 1, 2011, indicated time had not been waived and inquired whether the entry reflected the wishes of the prosecution or the defense. Defense counsel replied that both sides had declined to waive time. The reply appears to have been incorrect: the minute entry for July 1, 2011, indicates defense counsel, but not defendant or the prosecution, had declined to waive time. Defendant stated he knew nothing about time not being waived and said he was trying to get time waived.

The trial court remarked that time had been waived until July. Defendant reiterated he was trying to get time waived "for a little period of time so [he] can try and get something done on [his] behalf" because his counsel refused to honor his requests to file motions.

Defendant's counsel replied that, while she had considered making a suppression motion earlier in the case, she made a tactical decision to forego the motion when she received additional discovery from the prosecutor. She indicated she would not file meritless or frivolous motions on defendant's behalf.

Defendant responded he and his counsel had agreed on the motions to be filed, but she never filed them. Because of the disagreement over trial strategy, defendant wanted more time to find another lawyer. Defendant reiterated he knew nothing about revoking his time waiver at the beginning of July.

The trial court denied defendant's request to discharge his counsel, explaining, "[a]t this time, in light of the time-not-waived status on both sides, I'm going to deny your motion on the fact that, number one, I don't think there's grounds [*sic*] and I don't think it's timely."

Defendant inquired whether he was allowed additional time to find another attorney. The court replied, "[i]t's changed slightly on time-not-waived status. However, you are able to hire a different lawyer, but you may find yourself in the situation where the court would only allow the substitution of the lawyer provided that person is ready to

4

proceed on the trial date, which is next Friday."  Defendant then requested appointment of the public defender, which the court denied.

Three days prior to the scheduled start of defendant's jury trial, the prosecution filed a motion asking the trial court to reconsider its earlier ruling using the legal standard applicable to motions to discharge retained counsel.  The motion argued that, even under the correct standard, defendant should not be allowed a continuance to retain new counsel.  The motion argued:  "This case . . . may be just a last minute attempt by [defendant] to discharge counsel and delay the start of the trial.  [Defendant] did not raise the issue of terminating his defense counsel until it became clear that the case was not going to settle and [defendant] was not satisfied with the settlement offer made to him by the Strike Committee.  [¶]  Moreover, the People have three victims, one from Stockton, one from Riverside, California, and another . . . from Spokane, Washington.  Other witnesses are under subpoena and prepared to testify.  It would be a disruption to the People and its [*sic*] witnesses to delay this case."

Six days later, on August 29, 2011, all parties appeared before the trial court for reconsideration of the motion.  The court confirmed it previously had conducted a *Marsden* hearing based on its mistaken belief defense counsel had been appointed to represent defendant.  The court then explained, "Well, one of the rulings I made on [August] the 18th was that I didn't think that the motion, whether *Marsden* or otherwise, had been filed timely because the matter was in the status of being time not waived."  Defense counsel and the prosecutor both confirmed that, as of that date, time had not been waived.  The trial court then ruled:  "If it remains time not waived I'm going to find a motion to change counsel is not timely."

### *Analysis*

Defendant's claim of error in his opening brief is confined to the August 18, 2011, *Marsden* hearing.  The brief makes no mention of the August 29, 2011, reconsideration ruling under the proper legal standard for retained counsel.  The Attorney General

addressed the reconsideration in her brief.  Defendant, who has not filed a reply brief, makes no claim of error with respect to the reconsideration.  Under these circumstances, defendant has forfeited any claim of error with respect to the reconsideration ruling.  (Cf. *People v. Battle* (2011) 198 Cal.App.4th 50, 62; *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282.)

In any event, there was no error.  A criminal defendant has a right to retain counsel of choice, which includes the right to discharge an attorney whom he or she hired but no longer wishes to retain.  (*People v. Ortiz* (1990) 51 Cal.3d 975, 983 (*Ortiz*).)  While a defendant may discharge *appointed* counsel only if that lawyer is rendering inadequate representation or there exists an irreconcilable conflict between counsel and client (*Ortiz,* at p. 984; *Marsden, supra*, 2 Cal.3d at p. 123), a defendant may discharge *retained* counsel with or without cause (*Ortiz*, at p. 983).

However, as the court recognized in *Ortiz*, a defendant's right to retained counsel of his choice is not absolute, and the trial court has discretion to deny a motion to substitute counsel if it is not timely.  (*Ortiz, supra*, 51 Cal.3d at pp. 982-983.)  "A criminal defendant's right to decide how to defend himself [or herself] should be respected unless it will result in 'significant prejudice' to the defendant or in a 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.'  [Citation.]  In other words, we demand of trial courts a 'resourceful diligence directed toward the protection of [the right to counsel] to the fullest extent consistent with effective judicial administration.'  [Citation.]"  (*Ibid*.)

Thus, the trial court "must balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution."  (*People v. Lara* (2001) 86 Cal.App.4th 139, 153.)  The disruption must be "unreasonable under the circumstances of the particular case."  (*People v. Crovedi* (1966) 65 Cal.2d 199, 208.)

In this case, the trial court's initial ruling on August 18, 2011, was based on a mistaken understanding that defense counsel had been appointed rather than retained.

6

However, upon reconsideration, the trial court corrected its mistake and applied the correct legal standard. We conclude the trial court reasonably concluded defendant's request to discharge his counsel was untimely. At the August 29, 2011, hearing, defense counsel and the prosecutor both confirmed that, at that point, time no longer was waived. Thus, the statutory deadline for trial to commence was August 30, 2011. Given the late date of defendant's request and the upcoming trial date, it was more than reasonable for the trial court to deny defendant's request based on untimeliness.

First, defendant did not raise the issue of discharging defense counsel until one week before his jury trial was scheduled to start.

Second, defendant did not offer any information about how soon he could retain new counsel. Although he claimed he needed only "a little period of time," defendant gave no indication of the steps he had taken to retain new counsel or the time it would take him to do so. The court could conclude any delay would be substantial based on defendant's claim he was "isolated in DVI" where "[t]here's [*sic*] no phones." At the close of the August 18, 2011, hearing, defendant asked the trial court to appoint the public defender to represent him "[i]f [he] can't afford another attorney," thus implying he had not contacted other attorneys and did not know whether he could afford their services.

Finally, the trial court could conclude it would be disruptive to continue the case. The case involved three victims -- one from Stockton, one from Riverside, and one from Washington. The prosecution had the three victims and other witnesses under subpoena and ready to testify at trial.

For all these reasons, the trial court did not abuse its discretion when it reconsidered defendant's request to discharge defense counsel and found the request untimely. There was no error.

## II

### *Reduction of Theft Conviction*

Defendant contends, and the People concede, his felony grand theft conviction must be reduced to misdemeanor petty theft.  We agree.

The grand jury indictment alleged in relevant part that, on or about March 9, 2010, defendant and his codefendants "did willfully and unlawfully take money or personal property of victims, DANIEL FORSYTHE and LINDA C. FORSYTHE in the amount of $750."

At that time, section 487, subdivision (a), provided that grand theft is committed "[w]hen the money, labor, or real or personal property taken is of a value exceeding four hundred dollars ($400)."  (Stats. 2009-2010, 3d Ex. Sess., ch. 28, § 17, eff. Jan. 25, 2010.)

While this case was pending, the Legislature amended section 487, subdivision (a), to increase the threshold for committing grand theft to $950.  (Stats. 2010, ch. 693, § 1.)  At the jury instructions conference, defense counsel objected that the dollar amount had been amended.  The trial court acknowledged the amendment but elected to use the lower amount in effect at the time of the offense.

The First District Court of Appeal concluded the Legislature intended that the amendment to section 487 be applied retroactively to cases not yet final on appeal. (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1150-1152 (*Wade*).)  *Wade* reasoned: "An August 3, 2010, Senate Rules Committee analysis provided the following argument in support of the amendment to section 487:  'According to the author's office . . . "existing law sets the minimum threshold for grand theft at $400.  This amount has not been indexed for inflation and has not been adjusted since 1982.  Last year, we adjusted the threshold for 39 property crimes but did not adjust grand theft. . . .  [¶]  . . . AB 2372 adjusts the threshold amount for the first time in a generation, taking into consideration these inflationary factors, and sets the amount at $950. . . .  In 2009, the Department of

8

Corrections estimated savings of $68.4 million dollars for the 2010/11 Budget if all property crimes were adjusted for inflation. Leaving the grand theft threshold unchanged undermines these savings. The Department estimates there will be 2,152 fewer defendants sent to state prison for these property crimes by December 2011 if AB [2372] is enacted into law."' [Citation.] . . . [T]he 2010 amendment to section 487 mitigated punishment by raising the value of the stolen property required to establish the crime of grand theft, and the Legislature was motivated by a desire to save money by avoiding sentencing certain defendants to prison. In the absence of an express statement to the contrary, we conclude the Legislature intended that the amendment to section 487 be applied retroactively." (*Id*. at pp. 1151-1152.)

We agree with the reasoning in *Wade, supra,* 204 Cal.App.4th 1142. Because defendant's conviction was not yet final when the amendment to section 487, subdivision (a), became effective, and the Legislature's rationale for raising the threshold for grand theft was to reflect inflationary factors and achieve budgetary savings, the trial court erred by failing to instruct the jury the threshold amount for the crime of grand theft was $950.

The error was prejudicial. The indictment alleged, and the evidence showed, the Forsythes gave defendant a check for $750. There was no other evidence to support a grand theft conviction. (Cf. *Wade, supra*, 204 Cal.App.4th at p. 1153, fn. 5 [allowing retrial where sufficient evidence was presented].)

Accordingly, we modify defendant's grand theft conviction to misdemeanor petty theft. Because this was defendant's only felony, the enhancement for committing a felony while released from custody (§ 12022.1) must be dismissed.

### III

### *Conduct Credit*

Defendant contends prospective application of section 4019, the conduct credit provision of the Realignment Act, violates equal protection principles. The California

9

Supreme Court rejected this contention in *People v. Lara* (2012) 54 Cal.4th 896, 906, footnote 9 (*Lara*).**3**

In *Lara*, the Supreme Court explained its rejection of the defendant's equal protection argument as follows: "As we there [*People v. Brown* (2012) 54 Cal.4th 314, 328-330 (*Brown*)] explained, '"[t]he obvious purpose"' of a law increasing conduct credits '"is to affect the behavior of inmates by providing them with incentives to engage in productive work and maintain good conduct while they are in prison." [Citation.] "[T]his incentive purpose has no meaning if an inmate is unaware of it. The very concept demands prospective application."' (*Brown*, at p. 329, quoting *In re Strick* (1983) 148 Cal.App.3d 906, 913.) Accordingly, prisoners who serve their pretrial detention before such a law's effective date, and those who serve their detention thereafter, are not similarly situated with respect to the law's purpose. (*Brown*, at pp. 328-329.)" (*Lara, supra,* 54 Cal.4th at p. 906, fn. 9.)

Defendant is not entitled to additional presentence conduct credit.

We note that, at sentencing, the trial court limited defendant's presentence conduct credit to 80 percent "because of the strike." However, the three strikes law's 20 percent limit on the accrual of credit (§ 667, subd. (c)(5)) applies to postcommitment (in-prison) credit, not precommitment conduct credit. (*People v. Caceres* (1997) 52 Cal.App.4th 106, 110.)

On remand, the trial court shall resentence defendant based on his conviction of three misdemeanor offenses.

---

**3** The People contend that, in light of our modification of the judgment in part II, *ante*, defendant's section 4019 contention "is likely moot." No authority is cited and no effort is made to identify factors we should consider in assessing the likelihood of mootness. Accordingly, and in an abundance of caution, we consider defendant's section 4019 argument on its merits.

## DISPOSITION

Defendant's felony grand theft conviction is reduced to a misdemeanor petty theft and the enhancement for committing a felony while released from custody is dismissed. As so modified, the judgment of conviction is affirmed. Defendant's prison sentence is stricken and the matter is remanded for resentencing and recalculation of conduct credits in accordance with this opinion.


    HOCH    , J.


We concur:


    BLEASE    , Acting P. J.


    BUTZ    , J.