Filed 3/26/26  P. v. Ortiz CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D087151 |
| Plaintiff and Respondent, | (Super. Ct. No. INF2300059) |
| v. | |
| OSCAR DANIEL ORTIZ, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Samah Shouka, Judge.  Affirmed with instructions.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Colette C. Cavalier and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Oscar Daniel Ortiz, Jr. of attempted murder (Pen. Code, §§ 187, subd. (a), 664; count 1),[1] forcible sexual penetration (§ 289, subd. (a)(1)(A); count 2), rape (§ 261, subd. (a)(2); count 3), criminal threats (§ 422; count 4), corporal injury on a spouse or person in dating relationship (§ 273.5, subd. (a); count 5), false imprisonment (§ 236; count 6), assault with force likely to produce great bodily injury (§ 245, subd. (a)(4); count 7), attempted kidnapping (§§ 207, subd. (a), 664; count 8), and domestic battery (§ 243, subd. (e)(1); count 9). The jury also found he inflicted great bodily injury (§§ 1192.7, subd. (c)(8), 12022.7, subd. (e)) as to counts 1 and 5; used a deadly weapon (§§ 1192.7, subd. (c)(23), 12022, subd. (b)(1)) as to counts 2, 3, 4, and 6; and committed count 9 while on bail (§ 12022.1).

On appeal, Ortiz contends: (1) the trial court abused its discretion by admitting evidence of uncharged acts of domestic violence; (2) the court had a sua sponte duty to instruct the jury on lesser included offenses for the rape charge (count 3); (3) the abstract of judgment should be amended to correctly reflect the charge on which the jury was instructed for count 7 (§ 245, subd. (a)(4)); (4) for the attempted murder (count 1) and assault (count 7) charges, there was insufficient evidence he inflicted great bodily injury or used force likely to produce great bodily injury; (5) the trial court erred by permitting the examining nurse to testify about enhanced photos of the injuries; (6) the court erred when it found he was not entitled to conduct credit; and (7) the abstract of judgment should be amended to reflect that the court waived all fines.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

The Attorney General concedes the abstract of judgment should be amended to reflect the correct charge on which the jury was instructed for count 7, and to award 54 days of conduct credit to Ortiz. We agree. We conclude the abstract of judgment should also be amended to strike any reference to the waived fines. In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2023, the prosecution charged Ortiz with attempted premeditated murder (§§ 187, subd. (a), 664; count 1), forcible sexual penetration (§ 289, subd. (a)(1)(A); count 2), rape (§ 261, subd. (a)(2); count 3), criminal threats (§ 422; count 4), corporal injury on a spouse or person in dating relationship (§ 273.5, subd. (a); count 5), false imprisonment (§ 236; count 6), assault with a deadly weapon other than a firearm, to wit hands and feet (§ 245, subd. (a)(1); count 7), attempted kidnapping (§§ 207, subd. (a), 664; count 8), and domestic battery (§ 243, subd. (e)(1); count 9). The information also alleged enhancements for great bodily injury (§§ 1192.7, subd. (c)(8), 12022.7, subd. (e); counts 1 and 5), use of a deadly weapon (§§ 1192.7, subd. (c)(23), 12022, subd. (b)(1)); counts 1–4, 6), and committing felonies while on bail (§ 12022.1; count 9).

A.    *Prosecution Case*

Ortiz and A.R. began a dating relationship in November 2022. Sometimes they engaged in rough sex play or games. This included slapping and choking. A.R. never agreed to any anal penetration with Ortiz. She had sex toys in her bedroom, but she had never used them with him.

In late December 2022, J.S. reached out to A.R. on social media. J.S. claimed to be an on-again off-again girlfriend of Ortiz and said Ortiz had cheated on her. A.R. responded with texts such as, "I got you girl, fuck this

3

bitch," and "Watch me, he knows already, he ain't shit," both referring to Ortiz.

One to two weeks later, A.R. and Ortiz were on a date at her apartment. Ortiz confronted A.R. about whether she thought he was a "bitch." He pulled out the chair from under A.R., and she fell to the floor. He then dragged her by the ankles to the bedroom. This was caught on A.R.'s home surveillance video.

In the bedroom, Ortiz held a knife against A.R. and ordered her to take her clothes off. He inserted a sex toy into her vagina and then her anus. He slapped her hard in the back of the head multiple times. Ortiz continued to hold a knife against A.R. while he inserted his penis into her vagina.

At some point during the rape, A.R. managed to call 911 from her cell phone.

Ortiz stated, "Now I'm really going to have to kill you." He told A.R. they were leaving and held the knife against her throat. As A.R. tried to run away, he restrained her and poked her stomach with the knife. He also strangled her until she could not breathe. She urinated on herself out of fear. When A.R. tried to fight Ortiz off, he repositioned himself and strangled her again with greater force. A.R. lost consciousness and woke up as law enforcement arrived.

A.R. came out of the apartment with blood on her face. She was naked from the waist down. First responders transported her to a hospital for a sexual assault and strangulation exam. The examining nurse photographed A.R.'s injuries using an "inverted filter" that helped make the injuries more visible in the photos. A.R. had injuries to her vagina, rectal area, face, fingers, stomach, and limbs, and in her throat and eyes. She suffered from

4

bruising, lacerations, swelling, scrapes, burst blood capillaries, and lasting pain.

Male DNA was not detected in A.R.'s vaginal sample. However, Ortiz's penile swab contained A.R.'s DNA.

B.  *Defense Case*

Ortiz testified in his defense. He admitted to losing his temper, pulling the chair out from under A.R., and dragging her to the bedroom. He claimed she initiated kissing and oral sex to deescalate him. He stated he strangled her with her acquiescence, which they had done before.

Ortiz confirmed he inserted a sex toy in A.R.'s anus, which made her yelp. The yelp was caught on audio, offscreen, on the surveillance video. Ortiz acknowledged A.R. said it hurt but claimed she never said no or told him to stop. He opined, "due to the fact that things were heated beforehand, it didn't really seem to bother her that much."

Ortiz denied engaging in vaginal intercourse with A.R. He asserted she became aggressive and grabbed a knife when he accidentally called her by someone else's name. He pushed her and took the knife away. He acknowledged he easily overpowered her, and he had no injury. He explained A.R. probably received her head injuries from the day prior when he consensually slapped her in the back of the head. He assumed she bled when he accidentally cut her ear while trying to get the knife away.

During closing arguments, Ortiz's trial counsel argued A.R.'s injuries came from consensual rough activity, and A.R. lied to punish Ortiz for cheating on J.S.

C.  *Verdict, Sentencing, and Fines*

As to count 1, the jury convicted Ortiz of attempted murder but found he did not premeditate or deliberate. It also found he did not use a knife in

5

the commission of this offense. As to the balance of the charges and enhancements, the jury convicted in its entirety.

The court imposed a total prison sentence of 15 years eight months. It denied Ortiz the 54 days of conduct credit he had earned while in custody pending trial.

The court waived all the mandatory fines and fees but ordered restitution to the victim.

## DISCUSSION

A.    *Evidence of Uncharged Domestic Violence*

Ortiz contends the trial court abused its discretion by admitting evidence of uncharged acts of domestic violence. For reasons we shall explain, we disagree.

1.    Additional Background

Before trial, the prosecutor moved to admit evidence of prior domestic violence perpetrated by Ortiz against A.C., a former girlfriend with whom he had a child. Over the defense's objection, the court admitted the prior act evidence with the exception of one incident the court found to be unduly prejudicial.

Thereafter, A.C. testified about five specific times when Ortiz physically abused her between 2018 and 2020, at least three of which involved strangulation. Her sister also testified about having witnessed one of the strangulation incidents.

2.    Analysis

Evidence of prior acts is generally not admissible to show a defendant's propensity to commit the charged offense. (Evid. Code, § 1101, subd. (a).) However, in domestic violence cases, propensity evidence is permitted unless its "probative value is substantially outweighed by the probability that its

6

admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury" under Evidence Code section 352. (*Id.*, § 1109, subd. (a)(1).) Evidence of acts that occurred more than 10 years before the charged offense is generally inadmissible. (*Id.*, subd. (e).)

We review challenges to the admission of such evidence for abuse of discretion. (*People v. Mani* (2022) 74 Cal.App.5th 343, 358.)

Here, the evidence qualified as potentially admissible evidence under Evidence Code section 1109, subdivision (a)(1), because it all consisted of violence against a domestic partner, A.C. A.C. had a child with Ortiz, had previously lived with him, and previously was in a relationship with him. Therefore, we must assess whether the evidence at issue was rendered inadmissible under Evidence Code section 352.

When analyzing whether a prior act is more probative than prejudicial under Evidence Code section 352, we look at factors such as whether the evidence creates an inference that the defendant had a propensity to commit the charged acts, whether the uncharged acts are similar to the charged offense, the degree of certainty the prior instances of domestic violence occurred, whether the jury might convict to punish the defendant for the uncharged acts, and whether the prior acts were more inflammatory than the charged offense. (*People v. Kerley* (2018) 23 Cal.App.5th 513, 536–540; see also *People v. Culbert* (2013) 218 Cal.App.4th 184, 192 [additional factors for consideration include possibility of confusion by jury, remoteness of uncharged offense, and time spent on presenting and rebutting evidence of uncharged offenses].)

Here, both the instant case and some of the prior incidents with A.C. involved strangulation, permitting an inference of Ortiz's propensity to

7

commit domestic violence in this manner. Given A.R.'s and Ortiz's admitted history of consensual sex involving strangulation and Ortiz's claim A.R. had motive to lie, the incidents with A.C. were highly probative. Furthermore, A.C.'s sister was an eyewitness to one of the incidents, which made it likely at least one of the prior incidents occurred. The prior acts were not unduly inflammatory either. The instant case was the most severe of all, as it involved sexual violence, threats to kill, and attempted murder. Further, the court excluded evidence of one prior act of domestic violence to minimize undue prejudice. The prior incidents occurred three to five years before the charged offense, well within the presumptive 10-year cutoff. (See Evid. Code, § 1109, subd. (e).) The evidence did not take up undue time. The entirety of A.C.'s testimony took up 20 pages of transcript, with 11 of those being direct examination dedicated to the prior act evidence.

For all these reasons, we conclude the trial court did not abuse its discretion in admitting the uncharged domestic violence evidence.

B. *Instruction on Lesser Included Offenses for the Rape Charge*

Ortiz contends the court should have sua sponte instructed the jury on lesser included offenses for the rape count, such as attempted rape or assault with intent to commit rape, because the evidence of rape was inconclusive.

The court must instruct on a lesser included offense only when there is substantial evidence for a reasonable jury to find guilt for the lesser offense but not the greater. (*People v. Miranda* (2021) 62 Cal.App.5th 162, 176–177 (*Miranda*).) In this context, we ascertain whether such evidence is substantial by its " 'bare legal sufficiency' " rather than its weight. (*Id.* at p. 177.) We review the evidence in the light most favorable to the defendant. (*Ibid.*)

8

The crime of rape "is an act of sexual intercourse" (§ 261, subd. (a)), defined as "any penetration, no matter how slight, of the vagina or genitalia by the penis." (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79.) Ejaculation is not an element of rape. (See *People v. Wallace* (2008) 44 Cal.4th 1032, 1079.)

Here, Ortiz's trial counsel argued A.R. had a motive to lie and set him up to punish him for wronging J.S. Ortiz testified he was going to penetrate A.R.'s vagina with his penis but he believed he did not. Also, no male DNA was detected in A.R.'s vaginal sample. Ortiz uses this lack of DNA to claim the evidence of rape was not substantial. However, a reasonable jury could find otherwise by inferring Ortiz had not ejaculated or had only engaged in slight penetration.

A.R. provided graphic detail as to the rape itself. She testified Ortiz inserted his penis inside her vagina and moved his penis back and forth. She felt the action and saw him in the mirror. She further described his action as "raping" her. He raped her long enough she was able to attempt calling 911 multiple times. Her 911 call, during which she declared, "Oscar Ortiz is raping me," while the rape was occurring, was played for the jury.

Ortiz contends A.R.'s testimony alone is not sufficient because there was contradictory evidence pointing to a lesser included offense. In his testimony, Ortiz did not directly contradict her testimony that he penetrated her vagina with his penis. He testified he did not *think* he penetrated A.R.'s vagina with his penis, and that he *believed* he did not penetrate her vagina with his penis. These statements merely expressed his uncertainty. While more information about the specific damage to A.R.'s vagina may have further bolstered the rape charge, the damage to her vagina, coupled with her uncontradicted testimony about penetration, is substantial evidence of rape.

9

A court is not required to instruct the jury based on the weak evidence supporting a lesser included offense. (*See People v. Vargas* (2020) 9 Cal.5th 793, 827.) This evidence does not show "a jury would conclude the lesser but not the greater offense was committed." (*Ibid.*) Thus, the court had no duty to instruct on the lesser included offenses. (See *Miranda, supra*, 62 Cal.App.5th at pp. 176–177 [court has a duty to instruct on lesser included offense " ' "if there is substantial evidence that only the lesser crime was committed" ' "].)

C.    *Amending the Abstract of Judgment for Count 7*

The information charged Ortiz with assault with a deadly weapon, his hands and feet, under section 245, subdivision (a)(1). The verdict form for count 7 was consistent with the information, stating, "We, the jury in the above-entitled action, find the defendant, OSCAR DANIEL ORTIZ, JR., GUILTY of a violation of section 245, subdivision (a), subsection (1), of the Penal Code: Assault, to wit: Jane Doe, as charged under Count 7 of the Information."

However, for reasons that are unclear from the record, the court instructed the jury on assault likely to produce great bodily injury for count 7 (§ 245, subd. (a)(4)), rather than assault with a deadly weapon. Specifically, the court provided the jury with a modified version of CALCRIM No. 875 titled "Assault with Deadly Weapon," which gave the elements for assault likely to produce great bodily injury.[2] While reading this instruction to the jury, the court said, "The defendant is charged in Count 7 with assault with

_____

2    CALCRIM No. 875 has bracketed alternatives that can be customized to instruct on either assault with force likely to produce great bodily injury or assault with a deadly weapon.

10

force—assault with a deadly weapon—the defendant is charged in Count 7 with assault with force likely to produce great bodily injury." There was no objection to the instruction given, and much of the discussion about instructions was off the record.[3]

Ortiz presents two arguments related to count 7. His primary argument is that his conviction for count 7 must be vacated because the charge as alleged in the information was legally defective on its face. In the alternative, he asks us to order the trial court to amend the abstract of judgment to reflect that he was convicted of assault by means of force likely to produce great bodily injury, since this was the charge on which the jury was instructed.

Ortiz is correct in that count 7, as originally charged, was deficient. The information alleged Ortiz committed assault with a deadly weapon, his hands and feet, pursuant to section 245, subdivision (a)(1). Hands and feet are not deadly weapons as a matter of law. (See *People v. Perez* (2018) 4 Cal.5th 1055, 1065.) However, the defense never requested a judgment of acquittal on count 7, thereby waiving the pleading defect. (See *People v. Holt* (1997) 15 Cal.4th 619, 672.)

With respect to Ortiz's secondary argument, the Attorney General concedes the abstract of judgment should be amended to reflect a conviction for assault by means of force likely to produce great bodily injury. We accept

---

[3]     In closing, the prosecutor's only reference to count 7 was, "Assault with a deadly weapon—I think that's been sufficiently covered by the Court." Defense counsel simply said, "And regarding the domestic violence and the assault with the deadly weapon, I will submit to you that you should not find guilty Mr. Ortiz of those either." Neither discussed the elements of assault with a deadly weapon or assault with force likely to produce great bodily injury.

this concession.  The jury could not have convicted Ortiz of anything other than assault with force likely to produce great bodily injury because it was never instructed on any other crime for the purposes of count 7.  (See *People v. Frederickson* (2020) 8 Cal.5th 963, 1026 [we presume the jury understood and followed instructions].)  Thus, the verdict form's reference to the erroneous charge is a clerical error rather than a reflection of the true verdict.  (See *People v. Trotter* (1992) 7 Cal.App.4th 363, 370.)  We may correct a clerical error on a verdict form when the error does not reflect the jury's actual verdict.  (See *id.* at pp. 370–371 [clerical correction to verdict forms after jury is discharged is not modification of verdict itself]; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 (*Mitchell*) [a reviewing court has the authority to correct clerical errors at any time].)

The abstract of judgment should be amended to reflect the conviction for count 7, which is section 245, subdivision (a)(4), assault with force likely to produce great bodily injury.

D.     *Substantial Evidence Supported the Great Bodily Injury Findings*

Regarding counts 1 and 7, Ortiz contends there was insufficient evidence to support the jury's findings that he inflicted great bodily injury on A.R.[4]  Thus, he argues, the convictions denied him due process under both federal and state standards.

---

[4]     Given our conclusion to modify the abstract of judgment for count 7 to assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)), count 7 is applicable to this analysis.  "Great bodily injury" is defined the same for the purposes of both section 245, subdivision (a)(4) of count 7 and the section 12022.7, subdivision (e) great bodily injury enhancement for count 1.  (See *People v. Sandoval* (2020) 50 Cal.App.5th 357, 361; § 12022.7, subd. (f)(1).)

Great bodily injury is "significant or substantial physical injury." (§ 12022.7, subd. (f)(1).)  The distinction between great bodily injury and a nonqualifying injury can be a fine line.  (*People v. Quinonez* (2020) 46 Cal.App.5th 457, 465 (*Quinonez*).)  The injury does not need to cause "permanent," "prolonged," or "protracted" damage to the body.  (*Id.* at p. 464.)  Proof of great bodily injury is often shown through " 'evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury.' " (*Ibid.*)  Abrasions, lacerations, and bruising can qualify.  (*Ibid.*)  Loss of consciousness constitutes great bodily injury regardless of whether the injury required medical treatment.  (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1149 (*Wade*).)

Great bodily injury is a factual question for the jury, not a legal question for the court.  (*Quinonez, supra*, 46 Cal.App.5th at pp. 464–465.)  We affirm if there is substantial evidence to support the jury's findings on great bodily injury, even if the " ' "circumstances might reasonably be reconciled with a contrary finding." ' " (*People v. Escobar* (1992) 3 Cal.4th 740, 750.)  When we review the sufficiency of the evidence under the federal due process clause, we determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Rowland* (1992) 4 Cal.4th 238, 269.)  We use the same standard for purposes of the state due process clause.  (*Ibid.*)

Here, there was evidence that A.R. blacked out when Ortiz strangled her.  (See *Wade, supra*, 204 Cal.App.4th at p. 1149 [loss of consciousness constitutes great bodily injury].)  She testified she was still in pain after she was transported to the hospital.  According to A.R., her jaw was "super . . . tight," her throat, neck, and mouth felt swollen, and "pretty much

13

everything" hurt, including her face, head, ears, back, shoulders, and chest. (See *Quinonez, supra*, 46 Cal.App.5th at p. 464 [resulting pain is relevant to analysis of great bodily injury].)

There was also ample evidence from the sexual assault exam, which was conducted on the day of the incident, that A.R. had injuries to her vaginal area, petechiae[5] in both eyelids, scleral hemorrhages[6] in both eyes, bruising and swelling to her anal area, petechiae in different areas of her throat including the uvula, bruises and little scrapes to her face, knife cuts on her fingers, small puncture marks on the abdomen, and injury on her inner lip. She also exhibited bruising in her ears, right inner arm, left upper arm, both knees, and right chest area.

At trial, the examining nurse opined the petechiae in this case showed there was significant pressure and constituted serious injury. She also considered strangulation itself to be a serious injury.

Days after the incident, more injuries emerged. There was evidence that A.R. had bruising on her neck, on the inside of her mouth, all over her jaw, along her eyebrow, all over her face, knee, and legs, as well as hand marks all over her arms. The entire side of her face was swollen, she could not move her jaw, her scalp was sore, and her ears were completely bloody for days. The veins in her shoulders were "coming out more than normally." A.R. testified that, as of the date of her testimony (almost 11 months after the

---

5    Petechiae occurs when blood capillaries burst because blood is unable to move back down from the brain.

6    Scleral hemorrhaging is caused by the backflow of blood and its inability to return to the heart and lungs.

incident), her jaw was "not really right," and it still hurt.[7] (Cf. *Quinonez, supra*, 46 Cal.App.5th at p. 464 [prolonged damage is *not* required for great bodily injury].)

Collectively, this compelling evidence was more than sufficient to support the convictions for personal infliction of great bodily injury as to count 1 and assault with force likely to produce great bodily injury as to count 7. (See, e.g., *People v. Bustos* (1994) 23 Cal.App.4th 1747, 1755 [contusions, lacerations, abrasions]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 727, 733–734 [abrasions, lacerations, a long scratch, bruises, small cuts, swelling]; *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836–837 [contusions, swelling, abrasions, discoloration].)

E.    *Inverted Photos from Sexual Assault Exam*

Next, Ortiz contends the trial court erred by permitting the examining nurse to testify about enhanced photos of A.R.'s injuries without establishing a foundation for whether the enhancements exaggerated the injuries depicted in the photos. We review a trial court's decision to admit or exclude expert testimony for abuse of discretion. (*People v. Pearson* (2013) 56 Cal.4th 393, 443.)

Evidence Code section 720 deems a person qualified to testify as an expert if he or she has "special knowledge, skill, experience, training, or education" on the subject to which the testimony relates.

When the nurse who examined A.R. took the stand, she explained her background, training, and experience as a forensic nurse and in conducting sexual assault exams. She had conducted 151 sexual assault exams and

---

7    The incident occurred on January 5, 2023, and A.R. testified on November 29, 2023.

83 domestic violence or strangulation exams.  She had previously testified approximately 10 times as an expert in these examinations.

The nurse testified she personally observed the injuries on A.R. and took photographs as part of the examination.  She applied an inverted filter that, in her words, "we use for our exams."  She described an inverted filter in the following terms:  "So we have a camera that is supplied by . . . Secured Digital Forensic Imaging.  They supply us a camera and software.  After the exam, we are able to apply a filter which changes the color of the photo.  It does not change the photo itself.  It doesn't change what is there.  It just makes injuries easier to see.  [¶]  An example I like to give is if you were to go out on a bright sunny day and you look at a tree in direct sunlight, you can't really see the details of the tree.  You know that it's a tree, and you can see the outline of the tree.  But then if you put on a pair of sunglasses, you can see the tree—the details a lot easier.  So you might be able to see the leaves or a bird on the branch.  It's just changing the colors of what you see, but not changing the tree itself."

For every filtered photo, the prosecutor also provided the jury with an unfiltered version of the photo.  The nurse physically indicated the location of the injury in each photo, explained the nature of the injury depicted, and which body part the photo was showing.  For one of the photos, she described how the filtered version made it easier to see the outline of the bruise compared to the original.  For another photo, she explained the filtered version made the bruising easier to see and the abrasions were also visible.  The defense counsel's cross examination of the nurse did not include any questions about the injury photos or the inverted filter.

Based on this testimony, the nurse clearly had a general understanding of the technology and had used it before on a regular basis.  Her testimony

16

about the photos helped ensure the jury would not misinterpret the photos or believe the injuries to be worse than they were. Recognizing and describing the contents of such photos did not require additional or separate expertise. Therefore, the court did not abuse its discretion by permitting testimony about the filtered photos. In any event, the jury saw the corresponding unfiltered photos, which minimized any possible prejudice to Ortiz.[8]

F. *Conduct Credit*

Ortiz contends, and the Attorney General concedes, the trial court erred by denying Ortiz 54 days of conduct credit. We agree.

Section 2933.1 permits a person convicted of a felony to accrue up to 15 percent of worktime credit. When the defendant is sentenced under section 667.61, the one strike law, the court need not grant such presentence conduct credit. (*People v. Govan* (2023) 91 Cal.App.5th 1015, 1036–1037.)

By the time he was sentenced, Ortiz had accumulated 54 days of conduct credit. The court denied Ortiz credit for this time, citing section 667.61. However, the People never invoked section 667.61 by alleging the strikable circumstances in the accusatory pleading. (See § 667.61, subd. (*o*).) The lack of such notice precluded the trial court from sentencing Ortiz subject to section 667.61. (See *People v. Jimenez* (2019) 35 Cal.App.5th 373, 393–397.) Further, such a sentencing scheme would have required the court to impose an indeterminate term, and it did not. (See § 667.61, subd. (a).)

---

[8] We have independently reviewed the filtered and unfiltered photos in question. The filtered photos have a slight blue tint that shows more contrast between the injury and the rest of the skin. Each photo is a close of up an injury, depicting a small area of the body. The injury is visible in each of the unfiltered photos.

Because the People did not invoke section 667.61, the trial court erred in denying Ortiz his additional 54 days of conduct credit. Ortiz's total time credited should have been 419 days, as he spent 365 actual days in custody. Therefore, we instruct the court to amend the abstract of judgment to reflect that Ortiz has 419 days of presentence credit, including 54 days of conduct credit.

G.    *Mandatory Fines and Fees*

Ortiz contends the abstract of judgment must also be corrected to reflect that the trial court waived the mandatory fines and fees.

The trial court ordered $4,000 in restitution to the victim but waived the separate mandatory fines and fees. It reasoned Ortiz was going to serve 15 years in prison, and the money should go to A.R. and not the court. The prosecutor replied, "Yes, Your honor," but asked the victim restitution be subject to increase.

The abstract of judgment erroneously lists two fines. Item 9.a. notes a $10,000 restitution fine per section 1202.4, subdivision (b), and a $10,000 parole revocation restitution fine per section 1202.45. Item 13 reiterates: "Court orders defendant to pay a restitution fine [PC 1202.4(b)] in the amount of $10,000. Execution is stayed."[9]

When the oral pronouncement of judgment and the abstract of judgment are inconsistent with one another, the oral pronouncement controls over the abstract of judgment. (*People v. Zachery* (2007) 147 Cal.App.4th 380,

---

[9]    Victim restitution is distinct from a "restitution fine." A restitution fine does not go directly to the victim; it is deposited to a restitution fund in the state treasury. (*People v. Wilen* (2008) 165 Cal.App.4th 270, 283.)

385.)  The abstract of judgment may be corrected at any time for accuracy. (*Mitchell, supra*, 26 Cal.4th at pp. 185–188.)

On appeal, the Attorney General argues the abstract of judgment need not be amended because the fines have a mandatory minimum that can only be waived by a finding of compelling and extraordinary reasons, and the court's reasoning here was insufficient.  We need not reach this question.  Any such argument was waived when the prosecutor did not object in the trial court.  (See *People v. Tillman* (2000) 22 Cal.4th 300, 303.)

The abstract of judgment should be amended to strike the references to the fines the court had waived.

DISPOSITION

We affirm the judgment with instructions that the trial court award Ortiz 54 additional days of conduct credit, for a total presentence credit calculation of 419 days. We further instruct the court to amend the abstract of judgment and corresponding minute order as follows: (1) for count 7, Ortiz was convicted of assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)); (2) Ortiz's total presentence credit is 419 days; and (3) the $10,000 fines reflected in items 9.a. and 13 of the abstract of judgment should be deleted. The clerk of the superior court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

CASTILLO, J.

20